UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Covington)

| | | |
|---|---|---|
| CHRISTOPHER ACREE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 25-040-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, [1] | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Christopher Acree appeals the Social Security Administration's denial of his claim for disability insurance benefits ("DIB").  [Record No. 11]  He contends that the Administrative Law Judge ("ALJ") assigned to his case erred by failing to properly evaluate medical opinion evidence and by failing to incorporate limitations related to cane-use and sit/stand options when assessing his residual functional capacity ("RFC").  After reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence.  Therefore, the Commissioner's motion for judgement [Record No. 13] will be granted while Acree's motion [Record No. 11] will be denied.

## I.  Background

Acree was sixty-two years old when he applied for disability and disability benefits under the Social Security Act ("Act").  [Record No. 7 at 63]  He has a high school education

---

[1]  Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

and previously worked as an automobile sales associate. *Id.* at 184. Acree stopped working in December 2021 due to the following medical conditions: "severe back pain, balance and mobility issues, loss of bowel control, arthritis, numbness of feet, COPD and spinal disc deformity." *Id.* at 63. He filed an application for DIB under Title II of the Act in December 2021. *Id.* at 62. His claim was denied initially and again following reconsideration. *Id.* at 84, 119. ALJ Thuy-Anh Nguyen held an administrative hearing on November 16, 2023. *Id.* at 38. The ALJ issued an opinion denying Acree's claim for benefits. *Id.* at 21-33. Acree then sought review from the Appeals Council, but that request was denied. *Id.* at 8-10. The matter is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

A "disability" under the Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

> First, the claimant must demonstrate that [he or she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [he or she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [his or her] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [he or she] is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [his or her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's

- 2 -

residual functional capacity, as well as [his or her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). A reviewing court is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714. And substantial evidence is defined as such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

## III. Analysis

Here, the ALJ applied the proper legal standards in reaching her opinion by conducting the five-step analysis required for evaluating social security disability cases. [Record No. 7 at 24-33] At step one, the ALJ determines if a claimant is engaging in substantial gainful activity. 20 CFR § 404.1520(b). Substantial gainful activity occurs when a claimant performs significant physical or mental activities for pay or profit. 20 CFR § 404.1572(b). Here, the ALJ found that Acree had not engaged in substantial gainful activity since December 7, 2021, the alleged onset date of his disability. [Record No. 7 at 27]

At step two, the ALJ determines whether a claimant has a medically determinable impairment that is severe or a combination of impairments that collectively are severe. 20 CFR 404.1520(c). Here, the ALJ designated that Acree has the following severe medically determinable impairments (*i.e.*, ones that "significantly limit the ability to perform basic work activities"): "disorders of the spine, chronic obstructive pulmonary disease, and obesity." [Record No. 7 at 27] The ALJ then concluded that Acree's non-severe impairments (*i.e.*, those having no more than a minimal effect on his ability to engage in basic work-related activities) included: "hypertension; hyperlipidemia; obstructive sleep apnea; pulmonary edema; hearing loss; and status-post cataract surgeries." *Id.* at 27-28.

Step three requires the ALJ to ascertain if the claimant has an impairment or combination of impairments that are of a severity sufficient to meet or equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525, 404.1526. At this step, the ALJ found that Acree "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Record No. 7 at 28]. The ALJ evaluated Acree's medical conditions by examining the record and analyzing each condition and its related severity in reaching this conclusion. *Id.*

At step four, the ALJ considers whether a claimant has an RFC to perform his or her past relevant work. 20 CFR 404.1520(f). Here, the ALJ observed that Acree "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with certain postural and environmental restrictions. [Record No. 7 at 28] The ALJ also determined that Acree could perform past relevant work as an automobile salesperson. *Id.* at 33. Maintaining that "this work does not require the performance of work-related activities precluded by the

claimant's residual functional capacity." *Id.* Given that the ALJ determined that Acree could perform past relevant work, she did not evaluate the fifth and final step that calls for the ALJ to ascertain whether the claimant can do any other work. *Id.*

Acree challenges two aspects of the ALJ's decision. First, he contends that the ALJ failed to properly evaluate the medical opinion of Physical Therapist Dave Feeley. [Record No. 11 at 4-10] Second, he asserts that the ALJ did not adequately consider limitations related to cane use and sit/stand options in the RFC, effectively alleging that the ALJ also failed to properly evaluate Dr. Ymalay's medical opinion. *Id.* at 10-16.

The Commissioner disagrees and asserts that the ALJ reasonably considered the supportability and consistency of both Dave Feeley's and Dr. Ymalay's medical opinions. [Record No. 13 at 4] The Commissioner also maintains that the ALJ's findings regarding the persuasiveness of these opinions were supported by substantial evidence. *Id.* In addition, the Commissioner argues that the ALJ evaluated Acree's RFC based on the entire record, which supported the determination that Acree did not need a cane or a sit/stand option. *Id.*

### (1) Evaluation of Dave Feeley's Medical Opinion

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions." 20 C.F.R. § 404.1520c(b)(2). The supportability determination is defined in this way: "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. 404.1527(c)(3). And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." *Id.* Stated differently, the supportability factor provides that "[t]he more relevant the objective

medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 4041.520c(c)(2). And the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). To be sure, the consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources." *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

Acree disputes the consistency and adequacy of the ALJ's evaluation of Feeley's opinion. [Record No. 11 at 7-10] First, he argues that the ALJ failed to clearly articulate her evaluation of Feeley's medical opinion and appeared to contradict herself regarding the exertion level Acree could perform. *Id.* Specifically, Acree claims that the ALJ failed to identify which portions of Feeley's opinion were "accepted or rejected" after deeming the opinion partially persuasive. *Id.* at 8. He asserts that the ALJ "expressly rejects" the portion of Feeley's opinion limiting Acree to light work, despite ultimately adopting that limitation in the RFC. *Id.* However, this interpretation mischaracterizes the ALJ's decision.

While evaluating Feeley's opinion, the ALJ explained that she found it only partially persuasive because, although Feeley concluded that Acree could perform a range of work at the light exertional level, other evidence in the record supported a higher level of functioning. [Record No. 7 at 31-32] This evidence included Acree's unremarkable performance during medical consultative examination, the unremarkable clinical signs he exhibited, the limited treatment he pursued, and the physically demanding activities that he performed. *Id.* at 32. Based on the foregoing, the ALJ concluded that Acree could perform a range of work at the

medium exertional level and therefore found Feeley's opinion only partially persuasive. *Id.* The ALJ did not "expressly reject" his opinion regarding the exertional level. Rather, she provided a reasoned explanation for why she found Feeley's opinion partially persuasive, emphasizing that his conclusion regarding light exertional work was inconsistent with the overall medical and functional evidence in the record. *Id.* at 31-32.

Although the ALJ found Feeley's opinion only partially persuasive because Acree could perform activities at the medium exertional level, she ultimately concluded that Acree had the RFC to perform light work with additional postural and environmental restrictions. *Id.* at 28. She supported this finding with substantial medical and non-medical evidence in the record. *Id.* at 28-33. Acree's RFC also aligns with the assessment of Dr. Kip Beard, the State agency medical consultant at the reconsideration level. *Id.* at 74-78.

Regarding the medical and non-medical evidence in the record, the ALJ articulated the two-step process used to evaluate Acree's symptoms. *Id.* at 29. She first determined whether there was an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Id.* Next, upon finding such an impairment, the ALJ assessed the "intensity, persistence, and limiting effects" of Acree's symptoms to determine the extent to which they restricted his ability to perform work-related activities. *Id.* After considering the evidence in the record, the ALJ acknowledged Acree's reports of pain and other symptoms and concluded that, while his "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects" were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ provided specific reasons for this finding in her decision. *Id.* 28-33.

- 7 -

The ALJ discussed the types of treatments Acree received, including his successful use of pain medication to manage residual spine pain. *Id.* at 30. She also noted the absence of medical evidence supporting the need for an ambulatory assistive device (such as a cane) and found no indication in the record of a respiratory impairment with sufficient intensity, persistence, or limiting effects to prevent work. *Id.* Additionally, the ALJ gave considerable weight to Acree's activities, which she deemed inconsistent with his claim of disability. *Id.* at 30-31. She cited evidence in the record indicating that Acree engaged in tasks such as repairing his property, riding a four-wheeler, cutting and lifting wood, camping, and performing daily activities and self-care without difficulty. *Id.*

Regarding the medical opinion of Dr. Beard, who the ALJ referred to as the "State agency medical consultant at the reconsideration level," the ALJ found his opinion persuasive. *Id.* at 31. The ALJ explained that Dr. Beard supported his opinion with references to Acree's medical treatment and the clinical signs he exhibited. *Id.* She also noted that Dr. Beard's opinion was consistent with the longitudinal evidence, including Acree's limited recent treatment for his spine impairment, his successful pain management with medication, his unremarkable respiratory clinical signs, and the relatively demanding daily activities he performed. *Id.*

Thus, the ALJ's ultimate determination of Acree's RFC is supported by substantial evidence in the record, including medical and non-medical evidence and the medical opinion of Dr. Beard. The Court again notes that it is not at liberty to "second-guess" this decision "as long as the ALJ cited substantial, legitimate evidence to support [her] factual conclusions," as she did here. *Ulman*, 693 F.3d at 714.

### (2) Limitations in the RFC and Evaluation of Dr. Ymalay's Medical Opinion

Acree also contends that the Commissioner erred by failing to include limitations related to cane use and sit/stand options in the RFC.  [Record No. 11 at 10-16]  Specifically, he argues that the ALJ improperly evaluated Dr. Ymalay's opinion on two alternative grounds.  *Id.*  First, Acree asserts that the ALJ implicitly accepted limitations related to cane use and sit/stand options because the decision did not expressly reject those aspects of Dr. Ymalay's opinion.  *Id.* at 12-13.  However, he cites no legal authority to support his claim that a limitation must be incorporated into the RFC merely because it was not explicitly rejected.  In any event, this argument fails because the ALJ *did* address Acree's reported cane use and cited record evidence showing that Acree could meet the sitting and standing requirements of light work. [Record No. 7 at 29-31]

The ALJ acknowledged Acree's claims that he has several functional restrictions and that he requires the use of a cane.  *Id.* at 29.  However, the ALJ indicated that she found Acree's statements regarding the "intensity, persistence, and limiting effects" of his symptoms "not entirely consistent with the medical evidence and other evidence in the record."  *Id.*  Regarding cane use, the ALJ provided that "the record does not establish the claimant's ambulatory assistive device as medically necessary."  *Id.* at 30.  She then discussed what is needed to find a such a device "medically necessary."  *Id.*  Specifically, the ALJ found no medical evidence of chronic use of a cane, that Acree himself acknowledged that he has not been prescribed one, and the consultative examination revealed no clinical signs indicative of dependence on a cane "such as a positive straight-leg raising test or evidence of neurological compromise."  *Id.*  The ALJ's determination that Acree did not require a limitation for cane use or sit/stand options is supported by substantial evidence in the record.  And the Court is not at liberty to reweigh the

evidence or substitute its judgment, even if substantial evidence might also support a contrary conclusion. *See Ulman*, 693 F.3d at 714.

Alternatively, Acree contends that when an ALJ finds a medical opinion partially persuasive, he or she must evaluate the supportability and consistency of each individual limitation included in that opinion. [Record No. 11 at 13] Therefore, Acree argues that the ALJ was required to assess the supportability and consistency of each limitation proposed by Dr. Ymalay. However, when medical sources provide multiple opinions, "an ALJ is not required to articulate how [he or she] evaluated each opinion or finding individually but must instead articulate how [he or she] considered the opinions or findings from that source in a single analysis." 20 C.F.R. § 404.1520c(b)(1); *Kenneth M. v. Comm'r of Soc. Sec.*, No. 3:24-cv-00182, 2025 U.S. Dist. LEXIS 135571, at *11 (S.D. Ohio July 16, 2025).

The ALJ did not err when she did not articulate her evaluation of Dr. Ymalay's opinion regarding cane use or sit/stand limitations. She explained that she found Dr. Ymalay's opinion only partially persuasive because Acree's "physically intensive activities performed" undermined Dr. Ymalay's assessment that Acree was limited to "a range of work at the sedentary exertional level." [Record No. 7 at 32] Additionally, while the ALJ did not explicitly evaluate the supportability and consistency of Dr. Ymalay's opinion regarding cane use and sit/stand options, she explained her rationale for excluding those limitations from the RFC and supported her decision with substantial evidence, as discussed above. *Id.* at 26-33.

## IV. Conclusion

As noted previously, a reviewing court does not try the case *de novo* and even if the court would resolve the dispute differently, "the Commissioner's decision must stand if supported by substantial evidence." *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d

1024, 1028 (6th Cir. 1990).  In this case, the ALJ's opinion is supported by ample evidence and consideration of all material facts.  The Court cannot re-weigh the evidence in a manner such as to come to a different conclusion—even one which the evidence could have supported.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Plaintiff Christopher Acree's motion for judgment [Record No. 11] is **DENIED**.

2.      Defendant Commissioner of Social Security's motion for judgment [Record No. 13] is **GRANTED**.

3.      This action is **DISMISSED** and **STRICKEN** from the docket.

Dated:  September 4, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky